FILED
10/21/2020 5:53 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Maria Jackson

Cause No. **2020CI20514**

| | | |
|---|---|---|
| **MERITAGE HOMES OF TEXAS, LLC,** | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **37th** JUDICIAL DISTRICT |
| | § | |
| **AIG SPECIALTY INSURANCE COMPANY** | § | |
| | § | |
| *Defendant.* | § | BEXAR COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE**

COMES NOW, Plaintiff Meritage Homes of Texas, LLC, and files Plaintiff's Original Petition and Request for Disclosures and in support thereof would show the following:

**I.
DISCOVERY CONTROL PLAN**

1. Pursuant to Texas Rule of Civil Procedure 190.1 and 190.4, Plaintiff requests that this lawsuit be designated as a Level 3 case in accordance with a discovery control plan tailored to the circumstances of this specific lawsuit.

**II.
PARTIES**

2. Plaintiff Meritage Homes of Texas, LLC ("Meritage") is a limited liability company organized under the laws of the state of Arizona and with a principal place of business in Texas.

3. Defendant AIG Specialty Insurance Company ("AIG") is an Illinois corporation with a principal place of business in New York. AIG is an eligible surplus lines insurance company authorized to write insurance policies in the State of Texas and is engaged in the business of insurance in Texas. Defendant AIG has no registered agent in the State of

---

**Plaintiff's Original Petition and Requests for Disclosure**　　　　　　　　　　　Page 1

Exhibit B

Texas and can therefore be served with process by serving the **Commissioner of the Texas Department of Insurance at 333 Guadalupe, MC 112-2A, P. O. Box 149104, Austin, Texas 78714-9104**, and the Commissioner can then forward process to **Any Officer of the Corporation at 175 Water Street, 18th Floor, New York, NY 10038.** Plaintiff hereby requests issuance of Citation for Defendant AIG via the Commissioner of Insurance.

### III.
### VENUE AND JURISDICTION

4.  The Court has jurisdiction over this lawsuit because the amount in controversy is within the jurisdictional limits of this Court. Venue is proper in Bexar County, Texas because all or a substantial part of the events giving rise to this insurance dispute occurred in Bexar County, Texas. *See* TEX.CIV.PRAC. & REM.CODE §15.002(a)(1). Specifically, the real property at issue in this lawsuit is located in Bexar County, Texas.

### IV.
### OVERVIEW OF DISPUTE

5.  This lawsuit was necessitated by AIG's blatant and willful failure to fulfill contractual obligations owed to Meritage in connection with underlying residential construction defect claims in San Antonio. Meritage agreed to place its general liability insurance program with AIG and related affiliates for a period of 14 consecutive years, including the year at issue in this lawsuit. Prior to this claim, Meritage had only made one claim that implicated the AIG policy.

6.  Regarding this claim, Meritage constantly kept AIG fully apprised of all developments and routinely provided AIG with updated information and documentation, including timely responses to any AIG requests for same. Once in possession of the necessary documentation and information, and in addition to the contractual obligations under

its policy, AIG also owed an extracontractual duty to promptly effect a reasonable settlement of the claims. Nevertheless, when Meritage looked to AIG to take it out of harm's way, or at a minimum partner with Meritage on resolution of the claims at issue, AIG instead employed a strategy of continued delay, denial and intentional obfuscation designed to frustrate Meritage.. Meritage devoted substantial resources to meticulously documenting the claim while AIG did the exact opposite by ignoring the carefully packaged and presented data and delaying responses—all in a transparent effort to place its own interests over those of its insured.

7. AIG's strategy "worked", as its inaction forced Meritage to resolve the underlying claims on its own without any financial participation or even meaningful guidance from AIG. Abandoned by the carrier entrusted with its insurance program for well over a decade, Meritage did not want its homeowners to suffer the same fate. Meritage proactively addressed the homeowners' claims on its own, advancing millions of dollars and spending literally hundreds of man hours dealing with the claims. As a result, Meritage has been forced to chase AIG for reimbursement of those costs and expenses incurred in connection with resolution of the claims that are clearly owed under the policy. To date, those efforts have not proven fruitful, leaving Meritage with no other option than to file suit.

## V.
## BACKGROUND

### A. The Castle Hills Claims

8. Meritage developed a 100-home residential community in the San Antonio area known as The Preserve at Castle Hills ("Castle Hills"). In 2017, homeowners in Castle Hills asserted claims against Meritage concerning alleged foundation and drainage failures as evidenced by excessive movement of the foundations, and resulting damage, including

cracking of flooring, sheetrock, exterior veneer, concrete and flatwork, racking of doors/windows and other typical damage associated with foundation movement.

9.    Meritage quickly launched an investigation and determined that the foundation issues were primarily caused by an inadequate foundation system designed by an outside engineering services firm retained by Meritage which unfortunately affected almost every home in Castle Hills.  In an effort to stave off litigation and do the right thing by its innocent homeowners, Meritage implemented an aggressive, proactive strategy to address the homeowners' complaints and mitigate damages that included meeting with the residents of the community, including one community-wide meeting, developing an appropriate repair protocol, and working extensively with owners to convince them to settle their claims and accept repairs in lieu of initiating what would surely be protracted and expensive litigation. Meritage's efforts paid off, as 85 of the 100 homeowners ultimately settled and accepted Meritage's offers of repair.

10.   Of the 15 remaining homeowners that did not accept Meritage's offer of repair, 13 filed suit against Meritage in individual actions which were abated in favor of arbitration.

B.  **The AIG Policy/Coverage Position**

11.   AIG issued Meritage a general liability insurance policy, policy no. 7528534, for the period October 1, 2014 to October 1, 2015 with $25M per occurrence limits (the "Policy" or "AIG Policy").  With respect to the general liability/products completed operations exposure involved in the Castle Hills claims, the Policy has a $3M per occurrence self-insured retention ("SIR") that must be satisfied by Meritage prior to triggering AIG's obligations.  The SIR endorsement provides several avenues by which the SIR obligation can be satisfied.  Of note here, Meritage may erode the SIR through a combination of (1) covered

judgment/settlement amounts "*paid by [Meritage]*" and (2) costs related to the defense of any suits or investigation of claims alleging a covered loss "*paid by [Meritage]*", capped at 25% of the SIR.  Both AIG and Meritage agree that the Castle Hills claims fall under the applicable period of the Policy and are subject to a single $3M per occurrence SIR.

12. Meritage tendered the Castle Hills claims to AIG in late 2017 providing a substantial quantum of information and documentation related to the claims on a home-by-home basis, including expert reports, repair/relocation costs, estimates of future repair costs, and expert and attorney's fees.  AIG advised Meritage by correspondence dated March 30, 2018 that it was denying coverage as to those homes where the homeowner settled and accepted Meritage's repair offer (the "Repair Homes"), and reserving rights on the homes in litigation (the "Litigated Homes").  The denial on the Repair Homes was based exclusively on an "Architects and Engineers Errors and Omissions Exclusion ("A&E Exclusion") in the Policy that clearly was, and continues to remain, inapplicable.  With regard to the Litigated Homes, AIG reserved its rights primarily premised on exhaustion of the applicable $3M SIR and the A&E Exclusion, further noting that it only had a discretionary right to defend Meritage in the litigation which it declined to ever exercise.

13. In a series of subsequent correspondence, Meritage painstakingly outlined for AIG why its reliance on the A&E Exclusion was fatally flawed.  In short, Meritage advised that AIG was critically ignoring the fact that the A&E Exclusion in the Policy is <u>*not*</u> the standard "professional services" exclusion contained in its policy form, but a <u>*highly modified*</u> version from the iteration found in the policy form that was carefully and intentionally negotiated between the parties with a <u>*dramatically reduced scope*</u> that renders it completely inapplicable to the claim. Meritage's arguments, however, fell on deaf ears.  Far from acknowledging the correctness of Meritage's position, AIG's position on the A&E Exclusion

became a moving target. As Meritage would definitively point out why the AIG-relied upon provision or subsection of the A&E Exclusion did not apply, AIG would simply respond with another provision which similarly would have no relevance or applicability. Despite its best efforts, Meritage realized that AIG's "try this one on for size" approach reflected an ironclad (albeit unjustified) adherence to the A&E Exclusion and an overall desire to avoid coverage liability that would not change, no matter how weak or unjustified the "defense" offered up.

### C.  Meritage's Repair of the Castle Hills Homes and AIG's Response

14. Abandoned by AIG, and in order to mitigate damages, Meritage proceeded with repair settlements to resolve the foundation issues in the homes. Out of an abundance of caution, Meritage again approached AIG regarding approval of the repair protocol and settlements. Interestingly, although AIG had denied coverage for the Repair Homes only a couple of months earlier, AIG granted approval (through waiver of the voluntary payment provision in the Policy), *but only if the repair costs were determined to be covered*. Baffled by AIG's response and inconsistent statements regarding coverage for the Repair Homes and application of the A&E Exclusion, Meritage nevertheless forged ahead with the settlements and the repair program at its own cost in order to do right by its homeowners and mitigate the damages. Following years of working with homeowners, dedicating Meritage employees to Castle Hills exclusively, addressing homeowner concerns and questions, and otherwise working with them to repair their homes and coordinate the repair process with the numerous subcontractors involved, repairs to the homes are now virtually complete. As demonstrated below, Meritage's significant efforts in this regard have inured greatly to AIG's benefit. To date, Meritage has incurred and paid several million dollars in repair costs and associated other costs, fees, and legal/professional expense with respect to the Castle Hills claims.[1]

---

**Plaintiff's Original Petition and Requests for Disclosure**  Page 6

### D. The Litigated Homes and AIG's Response

15.     As noted above, of the 15 remaining homeowners that did not accept Meritage's offer of repair, 13 filed suit against Meritage in individual actions which were abated in favor of arbitration.[2]  The first suit filed, involving claimant Jessica Saldivar, was arbitrated in late 2018 and resulted in an award against Meritage in excess of $520,000.  The arbitrator specifically found the evidence was insufficient to order recission, but gave Meritage the opportunity, at its election, to re-purchase the Saldivar home.  The award only served to validate Meritage's proactive repair-based approach to the Castle Hills issues.

16.     Recognizing that the re-purchase option represented the best opportunity to mitigate its damages, again which would inure to AIG's benefit, Meritage approached AIG with a proposal whereby it would exercise the election with AIG's blessing.  In return, Meritage requested AIG cover Meritage's net out of pocket after it re-purchased the home and then repaired and sold it.  Even though it was abundantly clear by this juncture that the $3M SIR had been satisfied and that coverage existed for the claims, AIG declined to accept Meritage's proposal.  Instead, it offered a small percentage of the awarded damages plus attorney fees and costs, and advised that it would not stand in the way of Meritage proceeding with the re-purchase.  Without any assistance from AIG, and faced with an award of damages it was legally obligated to pay, Meritage chose to re-purchase the home at its own expense.

17.     Over the next year and through the Spring of 2020,  Meritage negotiated virtually identical re-purchase settlement agreements on 11 Litigated Homes prior to arbitration or extensive litigation, which resulted in the added benefit of not only  avoiding the

---

[1]This figure includes an arbitration award and settlements, including repair, associated costs, and legal expense incurred on the remaining homes in the community where the homeowners refused Meritage's offer to repair and filed suit, discussed below.
[2] The remaining two homeowner claims are currently unresolved.

---

**Plaintiff's Original Petition and Requests for Disclosure**                                                                              **Page 7**
Exhibit B

fees/costs component of any adverse award ( which were awarded to the plaintiff in the initial Saldivar arbitration proceeding), but also the defense and expert fees/costs Meritage would have incurred.  However, AIG continued to refuse to partner with Meritage on the mutually beneficial re-purchase strategy, leaving Meritage to proceed alone with no guidance, assistance, or meaningful cooperation.

18. Meritage thereafter re-acquired the 12 homes, completed the repairs, and is in the process of re-selling them.[3]  Mitigation efforts were a "win-win-win" for homeowners, Meritage, *and* AIG. AIG has never disputed that total loss and expense would have been much higher - for all concerned - had the suits proceeded in arbitration, and even more so since there are 100 homes in the community.

E.  **Additional Meritage Exposure on the Castle Hills Claims**

19. Of the 100 homeowners in the Community, 81 ultimately accepted Meritage's offer to install a moisture barrier or pier system (the remaining 4 homeowners accepted repair offers consisting of drainage repairs only).  The agreement reached with those 81 homeowners included an extended 1-year "fit and finish" warranty and a 5-year extension of the 10-year original structural warranty.

20. Regarding the 5-year extension of the structural warranty, there are 2 components.  First, while any pier adjustment work will be borne by the pier contractor during the length of the extended warranty, Meritage agreed to stand behind the repair work performed by subcontractors on its behalf to address any resulting or non-structural damage to the home.  Meritage also has exposure under the 5-year structural warranty on those homes where moisture barriers were installed (which do not carry a subcontractor extended

---

[3] Meritage and the 13th litigation claimant Fernandez reached a cash settlement that did not involve a re-purchase of the home.

**Plaintiff's Original Petition and Requests for Disclosure**                              Page 8

warranty), but do not perform adequately.  Offering these extended warranties was critical to obtaining permission from the homeowners to repair the subject homes, which again, prevented many more suits from being filed and the costs and potential exposure for such suits.

21. Meritage has additional exposure related to the 2 homeowners (one which has rejected Meritage's repair offer and another that has refused to allow an inspection) which may result in litigation.  While Meritage believes its settlements reasonably and fairly addressed homeowner concerns, Meritage also faces exposure from potential future suits by homeowners that accepted Meritage's repair offer.  AIG was well aware of this exposure and did not object to the settlements.

## VI.
## CAUSES OF ACTION

22. Meritage incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

### A. Breach of Contract

23. Under Coverage A of the AIG Policy, AIG is obligated to "pay…those sums in excess of the **Self-Insured Retention** that [Meritage] becomes legally obligated to pay as damages…because of…**Property Damage** to which this insurance applies….  The sums Meritage has incurred on the Repair Homes in the Castle Hills community and resolving the Litigated Homes clearly qualify as "damages" Meritage is "legally obligated to pay" because of covered "property damage".  Likewise, there is no question that the applicable $3M SIR has been satisfied.  Meritage made timely demand on AIG to reimburse all of its qualifying costs, fees, and expenses on the Repair Homes and the net loss (after repair and re-sale) on the

Litigated Homes in excess of the $3M SIR.

24. By refusing to pay Meritage these sums, AIG has breached its obligations under the AIG Policy.

25. Meritage suffered actual and consequential damages resulting from the breach.

26. Meritage is entitled to receive its costs and reasonable and necessary attorneys' fees and expenses it incurred prosecuting this lawsuit. *See* TEX.CIV.PRAC. & REM.CODE §38.001.

### B. Insurance Code Claims

27. AIG violated TEX.INS.CODE §541.060(a)(2)(A) and §541.060(a)(7) because it refused and failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which its liability had become reasonably clear and by "refusing to pay a claim without conducting a reasonable investigation with respect to the claim."

28. In its handling of the Castle Hills claims, AIG failed "to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." TEX.INS.CODE §541.060(a)(3). AIG's game of "whack a mole" on application of the A&E Exclusion that exclusively buttressed its denial of the Repair Home claims constitutes a clear and unmistakable violation of this provision. Similarly, AIG violated this provision by repeatedly and incredulously taking the position that the SIR had not been satisfied when, as a matter of undeniable fact even acknowledged by AIG, Meritage had paid the full $3M SIR.

29. AIG violated the Texas Insurance Code by failing to "affirm or deny coverage of a claim to a policyholder" within a reasonable time. TEX.INS.CODE §541.060(a)(4)(A).

30. AIG's conduct caused, and continues to cause, Meritage injury and Meritage is entitled to damages within the jurisdictional limits of this Court, as well as costs and reasonable and necessary attorneys' fees and expenses it incurred prosecuting this lawsuit pursuant to TEX.INS.CODE §§541.151 and 541.152. AIG's violations were committed knowingly thereby entitling Meritage to a trebling of its actual damages. TEX.INS.CODE §541.152.

**C. Declaratory Judgment**

31. Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Meritage requests that the Court declare the parties' rights and obligations under the AIG Policy. Specifically, Meritage requests a declaration that:

a. The applicable $3M per occurrence SIR under the AIG Policy has been satisfied through Meritage's payment of repair costs, related expenses and fees on the Repair Homes, and sums Meritage has paid towards defense and settlement on the Litigated Homes.

b. In light of the SIR satisfaction per a. above, no separate SIR obligation exists as to any future claims or litigation in the Castle Hills community, and to the extent such claims are covered under the AIG Policy, AIG will owe first-dollar coverage.

## VII.
## CONDITIONS PRECEDENT

32.     Meritage has fully performed any and all applicable conditions precedent to full recovery in this lawsuit.

## VII.
## JURY DEMAND

33.     Meritage hereby respectfully demands a trial by jury pursuant to Texas Rule of Civil Procedure 216 and is paying the jury fee contemporaneously with the filing of this Original Petition.

## REQUEST FOR DISCLOSURES

34.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is hereby requested to disclose, within 50 days of service, the information or material described in Rule 194.2.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Meritage Homes of Texas, LLC requests this Court to grant the declaratory relief requested above and award Meritage Homes of Texas, LLC its actual, consequential, statutory, and treble damages; court costs; reasonable and necessary attorneys' fees and expenses;  and pre-judgment and post-judgment interest, and other and further relief to which Meritage Homes of Texas, LLC may be justly entitled.

Respectfully submitted,

*[signature]*

Blake S. Evans
State Bar No. 06706950
E-Mail:  BEvans@SchubertEvans.com
David J. Schubert
State Bar No.: 17820800
E-Mail: DSchubert@SchubertEvans.com
Thomas D. Caudle
State Bar No. 04017500
E-Mail: TCaudle@SchubertEvans.com

**Schubert & Evans, P.C.**
900 Jackson, Suite 630
Dallas, Texas 75202
Telephone: (214) 744-4400
Facsimile: (214) 744-4403


Gene M. Witkin
State Bar No. 24037901
E-Mail: GWitkin@MenterWitkinlaw.com

**Menter & Witkin, LLP**
320 Seven Springs Way, Suite 250
Brentwood, TN 37027

**ATTORNEYS FOR PLAINTIFF
MERITAGE HOMES OF TEXAS LLC**